UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| TODD CURTIS MYERS,<br><br>    Plaintiff,<br><br>v.<br><br>ANOKA COUNTY SHERIFF, OFFICER SCHRODER, NURSEING [sic] STAFF, and DR. ON CALL,<br><br>    Defendants. | Civil No. 09-528 (RHK/JJK)<br><br>**REPORT AND RECOMMENDATION** |

Todd Curtis Myers, Prairie Correctional Facility, P.O. Box 500, Appleton, Minnesota, 56208, Plaintiff, pro se.

Robert D. Goodell, Assistant Anoka County Attorney, Government Center, 2100 Third Avenue, Suite 720, Anoka, Minnesota, 55303-5025, for Defendants Anoka County Sheriff and Officer Schroder.

JEFFREY J. KEYES, United States Magistrate Judge

Plaintiff, a state prisoner, has filed a complaint seeking relief under 42 U.S.C. § 1983. (Docket No. 1.) One of the Defendants, Anoka County Sheriff Bruce Andersohn, (hereafter "Andersohn"), has filed a motion seeking to dismiss the action as to him, pursuant to Fed. R. Civ. P. 12(b)(6). (Docket No. 19.) Plaintiff has filed a response to that motion, (Docket No. 24), so the motion is now fully briefed, and ripe for decision.

This matter has been referred to the undersigned Magistrate Judge for a for a report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court will recommend that Andersohn's motion to dismiss be granted, and that this action be dismissed as to him.

**I. BACKGROUND**

Plaintiff commenced this action by filing a six-page complaint, accompanied by twelve pages of attached exhibits.[1] The complaint alleges that at some unspecified time in the past,[2] Plaintiff was "in custody of Anoka County awaiting trial at the local jail facility." (Complaint, p. 5., ¶ 1.) While Plaintiff was in jail, he allegedly was "assaulted" by another inmate, who allegedly had been "brought in from a state facility on a writ." (Id., ¶¶ 3-4.) Plaintiff tried to get away to his cell, but the other inmate followed him, and hit him again. (Id., ¶ 4.) Plaintiff then felt his "jaw crack." (Id.)

At some point thereafter, a "C.O.," (presumably meaning a "correctional officer" or some other type of jail personnel), saw Plaintiff, and noticed blood on his lip. Shortly thereafter, Plaintiff was moved to "another unit." He then asked someone, (not identified), if he could see a doctor or nurse, because "the bleeding would not stop." (Id., ¶ 5.)

Plaintiff further alleges that:

> "During the move to the other unit Officer Schroder had asked if I wanted to press charges?, while shaking his head no standing under the camera, out of sight of said camera. [ ¶ ] I only replied, 'I need to see a Nurse or the Doctor', 'my jaw and right side of my face hurts as well.' [H]is reply to me was, 'Then you should not get in anymore fights and you will be fine.'"

(Id., ¶¶ 6-7.)

---

[1] Plaintiff's complaint is not serially paginated, and the various attached exhibits are not marked to facilitate easy reference. Therefore, the Court will refer to specific pages of the complaint and attached exhibits using the page numbers that were assigned by the Clerk's Office when the complaint and exhibits were filed, and scanned into the Court's electronic record-keeping system.

[2] The exhibits attached to the complaint suggest that the events on which this action is based probably occurred in late May 2007.

2

Sometime later, Plaintiff saw a nurse in a "med line," and he told her he was having pain in his jaw, and could not eat. (Id., ¶ 8.) The nurse allegedly told Plaintiff that someone would see him "'when they could get around to it.'" (Id., ¶ 9.) Plaintiff alleges that he subsequently informed several other unidentified jail employees that he was in pain, and that he needed medical attention, but nothing was done for him. (Id., pp. 5-6, ¶¶ 10-13.)

Eventually, Plaintiff was moved from the Anoka County Jail to the Minnesota Correctional Facility at St. Cloud, Minnesota, ("MCF-SCL").[3] When Plaintiff arrived at MCF-SCL, a nurse performed an intake examination. The nurse noted that Plaintiff's face was swollen, and referred him to an intake doctor. The doctor determined that x-rays should be taken, and the x-rays revealed that Plaintiff's jaw had been broken. The following morning, Plaintiff was taken to an oral surgeon outside of the prison. The oral surgeon showed Plaintiff the fracture that appeared on the x-ray, and "explained the treatment options available" to Plaintiff. (Id., p. 6, ¶¶ 14-17.)[4]

Based on these allegations Plaintiff has brought a § 1983 federal civil rights action against Andersohn, Officer Schroder, and defendants identified as "Nurseing [sic] staff, Dr.

---

[3] The complaint itself does not provide any dates for any of the events on which Plaintiff's claims are based. However, the exhibits attached to the complaint suggest that he was injured on May 23, 2007, and that he was transferred to state prison on May 24, 2007. (Complaint, pp. 9, 17.)

[4] The complaint itself does not provide any further information about the severity of Plaintiff's injuries, how they were treated, or the course of his recovery. However, the exhibits attached to the complaint indicate that Plaintiff's jaw was wired shut for some time, and that he made a reasonably good recovery from his injuries over the course of about two months. (Complaint, pp. 9-10, 15-18.) However, in the relief section of the complaint, Plaintiff claims that his "jaw now clicks," and causes him headaches when he eats. (Id., p. 4.)

3

on Call."[5] In the "relief sought" section of the complaint, Plaintiff states that he is "hopeful that the county will change it's policy, by throughly investigating all claims and or indications of assult [sic], by not just talking to the individual, but have the nurseing [sic] staff check out an inmate to see if immediate medical attention is required." (Id., p. 4., ¶ 1.) He also seeks compensation for "pain and suffering" during the days when he "was unable to sleep and eat due to the extreme pain," all of which allegedly resulted from his "repeated attemtes [sic] to see the nurseing [staff], as well as trying to see a Doctor that were ignored." (Id., ¶ 3.)

## II. STANDARD OF REVIEW

A civil complaint will be dismissed upon motion by a defendant if it fails to state a cause of action on which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a cause of action that will survive a Rule 12(b)(6) motion, a complaint must allege a set of historical facts, which, if proven true, would entitle the plaintiff to some legal redress against the named defendant(s) under some established legal theory. Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980) ("the complaint must allege facts, which if true, state a claim as a matter of law").

In deciding a Rule 12(b)(6) motion to dismiss, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions

---

[5] To date, service of process has been effected on only Andersohn and Officer Schroder, and they are the only defendants who have appeared in this action.

4

drawn by the pleader from the facts alleged. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Id. at 1959.

In Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), the United States Supreme Court reiterated that: "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'... Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id., at 1949, quoting Twombly, 550 U.S. at 555, 557.

Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). However, even a pro se complaint must allege facts, and not just bare, unsupported, legal conclusions. Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) ("[a]lthough it is to be liberally construed, a pro se complaint must contain specific facts supporting its conclusions"); Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995) ("[a]t the very least... the complaint must contain facts which state a claim as a matter of law and must not be

5

conclusory") (emphasis added).

"[I]n fulfilling its duty to liberally construe a civil-rights pleading," a court is not required to "divine the litigant's intent and create claims that are not clearly raised," nor is the court required to "read or construct an argument into a civil-rights pleading." Bediako v. Stein Mart, Inc., 354 F.3d 835, 840 (8th Cir. 2004). Federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004).

## III. DISCUSSION

To successfully plead a § 1983 civil rights cause of action, as Plaintiff is attempting to do here, a complainant must allege a set of historical facts, which, if proven true, would demonstrate that the named defendant(s) violated the complainant's federal constitutional rights while acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Furthermore, "[l]iability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights" protected by the Constitution. Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990); Speed v. Ramsey County, 954 F. Supp. 1392, 1397 (D. Minn. 1997) (same). In other words, civil rights claimants must plead facts showing each defendant's personal involvement in alleged constitutional wrongdoing. Ellis v. Norris, 179 F.3d 1078, 1079 (8th Cir. 1999). See also Beck v. LaFleur, 257 F.3d 764, 766 (8th Cir. 2001) (upholding summary dismissal of civil rights claims, because plaintiff's complaint "failed to allege sufficient personal involvement by any of defendants to support such a claim"). In sum, when a plaintiff seeks relief under § 1983, his complaint must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, while acting under color of state law, which purportedly violated the plaintiff's federal

6

constitutional rights.

In this case, Plaintiff has clearly failed to plead an actionable § 1983 claim against Defendant Andersohn, because his complaint does not describe any alleged act or omission by Andersohn that allegedly violated Plaintiff's federal constitutional rights. The complaint does not even mention the federal Constitution or any federal constitutional rights, and, more significantly, the complaint does not describe anything that Andersohn allegedly did, or failed to do. Indeed, the complaint's "Statement of Claim" does not even mention Andersohn, either by name, or by referring to his position as the Sheriff of Anoka County.

Giving Plaintiff's complaint the benefit of a generous liberal construction, it appears that he could be trying to allege that his federal constitutional rights were violated, because he did not receive prompt and appropriate medical care for the injuries he allegedly sustained at the Anoka County Jail.⁶ However, even if that is what Plaintiff <u>meant</u> to allege,

---

⁶ Based on the meager allegations of Plaintiff's complaint, it is impossible to ascertain his exact custody status at the time of the events giving rise to this action. The complaint indicates that Plaintiff was "awaiting trial," but it also indicates that he was "brought in on a probation violation." (Complaint, p. 5.) It is therefore unclear whether Plaintiff was a true pre-trial detainee who had not yet been convicted of any crime, or whether he was a convicted prisoner who had been taken back into custody for violating the terms and conditions by which he was previously released from prison. As a practical matter, however, Plaintiff's exact custody status has little, if any, significance, because the constitutional rights of pre-trial detainees under the Fourteenth Amendment's due process clause are generally the same as those of convicted prisoners under the Eighth Amendment's cruel and unusual punishment clause. See Johnson-El v. Schoemehl, 878 F.2d 1043, 1048 (8th Cir. 1989) (pre-trial detainees' "confinement conditions are analyzed under the due process clause of the Fifth and Fourteenth Amendments rather than the Eighth Amendment's 'cruel and unusual punishment' standard which is used for convicted prisoners"). See also Davis v. Hall, 992 F.2d 151, 152-53 (8th Cir.1993) (per curiam) (applying Eighth Amendment's "deliberate indifference to serious medical needs" standard to pre-trial detainee's § 1983 claim of deficient medical care).

(despite his failure to actually do so), his complaint would still fail to state an actionable § 1983 claim against Defendant Andersohn, because the complaint does not describe any act or omission <u>by Andersohn</u> that allegedly violated Plaintiff's constitutional rights. As previously noted, the complaint does not describe <u>anything at all</u> that Andersohn allegedly did or failed to do. Indeed, there is nothing to suggest that Andersohn knew anything about Plaintiff's alleged injuries and alleged need for medical treatment, or that Andersohn had ever heard of Plaintiff before the commencement of the present lawsuit. In any event, the complaint certainly does not allege any specific facts showing that Andersohn <u>personally</u> violated Plaintiff's federal constitutional rights.

It appears that Plaintiff might be trying to sue Andersohn just because he is the Sheriff of Anoka County, and as such, he presumably has some responsibility for the conduct of the staff at the Anoka County Jail.[7] However, if Plaintiff is seeking to hold Andersohn vicariously liable for allegedly unconstitutional misdeeds by his subordinates, then it is even more certain that he has failed to state an actionable § 1983 claim against Andersohn, because the doctrine of <u>respondeat superior</u> is not applicable to § 1983 claims. <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694 (1978). Simply put, Andersohn cannot be sued under § 1983, solely because his subordinates allegedly violated Plaintiff's constitutional rights. See <u>Estate of Rosenberg by Rosenberg v. Crandell</u>, 56 F.3d 35, 37 (8th Cir. 1995) ("[t]he general responsibility of a warden for supervising the operation of a

---

[7] Even this interpretation of Plaintiff's § 1983 claims requires a very liberal construction of the complaint, because, in fact, Plaintiff has <u>not</u> alleged that Andersohn has any supervisory responsibility for any personnel at the Anoka County Jail, and he has not actually alleged that his constitutional rights were violated by any of Andersohn's subordinates.

prison is not sufficient to establish personal liability" in a civil rights action).

Finally, the Court has not overlooked Plaintiff's submissions entitled "First Motion To Amend," (Docket No. 28), and "Supplemental Pleadings'," (Docket No. 33). Both of those documents suggest, (rather inartfully), that Plaintiff might want to amend his complaint. The "First Motion to Amend" indicates that Plaintiff's "Eighth amendment rights were violated when Jail Staff refused [to provide] medical treatment for his broken jaw," and that the Jail Staff was "deliberately indifferent" to his "serious medical needs." The motion also indicates that Plaintiff wants to "inlcude [sic] Anoka County, Anoka County Jail Staff that were present at his time of confinement, as defendants." The document entitled "Supplemental Pleadings'" indicates that Plaintiff wants his complaint to include the following: "1) Anoka County Staff that were present during plaintiffs [sic] detention at the Anoka County Jail;" and "2) To also Include Anoka County under a Monell Claim."

In a separate order entered contemporaneously with this Report and Recommendation, the Court has ruled that Plaintiff's "First Motion to Amend" must be denied, and his "Supplemental Pleadings'" must be stricken. However, even if Plaintiff's complaint were amended in the manner suggested by those two submissions, it still would not state an actionable § 1983 claim against Defendant Andersohn, because there still would be no allegations showing that Andersohn violated Plaintiff's constitutional rights. Indeed, neither of Plaintiff's two new submissions even mentions Andersohn, either by his name, or by his position.

In sum, there is simply nothing in any of Plaintiff's submissions in this case which suggests that Defendant Andersohn personally did anything, (or failed to do anything), that could be viewed as a violation of Plaintiff's federal constitutional rights. Thus, the Court

9

concludes that Plaintiff has no viable cause of action under 42 U.S.C. § 1983 (or otherwise) against Defendant Andersohn. Because Plaintiff has failed to plead an actionable claim against Andersohn, the Court will recommend that Andersohn's Rule 12(b)(6) motion be granted, and that Andersohn be dismissed from this action.

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. The motion to dismiss brought by Defendant Anoka County Sheriff Bruce Andersohn, pursuant to Fed. R. Civ. P. 12(b)(6), (Docket No. 19), be **GRANTED**; and

2. The claims against Defendant Anoka county Sheriff Bruce Andersohn be **DISMISSED WITH PREJUDICE**.

Dated: November 13, 2009

                                              s/ Jeffrey J. Keyes
                                              JEFFREY J. KEYES
                                              United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 1, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.