**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Todd Curtis Myers,

    Plaintiff,

v.

Officer Schroder, Nurseing [sic] Staff, and Dr. on Call,

    Defendants.

Civ. No. 09-528 (RHK/JJK)

**REPORT AND RECOMMENDATION**

Todd Curtis Myers, Minnesota Correctional Facility – Lino Lakes, 7525 4th Avenue, Lino Lakes, Minnesota, 55014, Plaintiff, *pro se*.

Robert D. Goodell, Assistant Anoka County Attorney, counsel for Defendant Officer Schroder.

JEFFREY J. KEYES, United States Magistrate Judge

    Plaintiff, a state prisoner, has filed a Complaint seeking relief under 42 U.S.C. § 1983. (Doc. No. 1.) One of the Defendants, "Officer Schroder,"[1] has filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Doc. No. 52.) Plaintiff has responded to that motion by filing a three-page letter addressed to the Court. (Doc. No. 63.) The matter has been referred to the undersigned Magistrate Judge for a for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, this Court recommends that Defendant Schroeder's motion for summary judgment be granted, and that this action be dismissed.

---

    [1] The Defendant identified as "Officer Schroder" has informed the Court that his true name is Andrew Schroeder. (Doc. No. 55, Attach. 4, Affidavit of Andrew Schroeder ("Schroeder Aff.").) The correct spelling of his name will be used hereafter.

## BACKGROUND

Plaintiff claims that his federal constitutional rights were violated while he was an inmate at the Anoka County Jail in Anoka, Minnesota. His complaint purports to state claims against four Defendants, who are identified as (1) "Anoka County Sheriff," (2) "Officer Schroder," (3) "Nurseing [sic] Staff," and (4) "Dr. on Call."

The first named Defendant, Anoka County Sheriff Bruce Andersohn, filed a motion seeking to have Plaintiff's claims against him dismissed pursuant to Fed. R. Civ. P. 12(b)(6). (*See* Doc. No. 19.) This Court previously recommended that Andersohn's motion to dismiss should be granted. (*See* Doc. No. 48, 11/13/09 Report and Recommendation.) Plaintiff did not file any objections to that recommendation, and Plaintiff's claims against Sheriff Andersohn were therefore dismissed. (*See* Doc. No. 49, 12/8/09 Order.)

Two of the other named Defendants, "Nurseing [sic] Staff" and "Dr. on Call," have not been served, and have not appeared in this action. Evidently, the Marshal has not been able to effect service of process on those two Defendants, because Plaintiff has not adequately identified them. Therefore, this Court recommends that Plaintiff's claims against those two Defendants be dismissed without prejudice. (*See* Discussion, pp. 16-17, *infra*.)

The only other Defendant in this case is Defendant Schroeder, whose motion for summary judgment is now before the Court. Defendant Schroeder is a "Detention Deputy" at the Anoka County Jail. (Schroeder Aff. ¶¶ 1-2.) Plaintiff's claims against Defendant Schroeder arose while Plaintiff was confined at the Anoka County Jail.

The record in this case shows that Plaintiff entered the Anoka County Jail on

March 29, 2007. (Doc. No. 55, Attach. 5, Affidavit of Jo Ann Maro ("Maro Aff.") ¶ 7.) He was taken into custody for allegedly violating the conditions of an earlier probation order, and he apparently was detained at the Anoka County Jail during his probation revocation proceedings.[2] Plaintiff must have been found guilty of violating the terms of his probation, because on May 24, 2007, he was transferred from the Anoka County Jail to a state prison facility.[3] He has since been confined by the State of Minnesota.

The events giving rise to the present lawsuit occurred on May 21, 2007. (*See* Maro Aff. ¶¶ 2-4.) Plaintiff alleges that on that date he was "assaulted" by another inmate at the Anoka County Jail. (Doc. No. 1, Compl., "Statement of Claim," ¶¶ 3-4.) He tried to get away to his cell, but the other inmate allegedly followed him, and hit him again. (*Id.* ¶ 4.) Plaintiff then felt his "jaw crack." (*Id.*) At some point thereafter, an unidentified "C.O.," (presumably meaning a "correctional officer" or some other type of jail personnel), saw Plaintiff, and noticed blood on his lip.[4] A short time later, Plaintiff was transferred to another part of the Jail. According to a "Movement Log" maintained

---

[2] In 1993, Plaintiff was placed on probation for fifteen years, pursuant to a plea agreement that resolved state criminal charges against him for criminal sexual conduct. (*See* Doc. No. 55, Attach. 1, Affidavit of Robert D. Goodell ("Goodell Aff."), Transcripts from guilty plea hearing and sentencing hearing.)

[3] The Affidavit of Jo Ann Maro indicates that Plaintiff "remained in the Anoka County Jail until March 24, 2007," (Maro Aff. ¶ 7), but that date clearly is a typographical or clerical error, because Plaintiff could not have left the jail five days before he arrived there on March 29, 2007. All of the other evidence in the record indicates that Plaintiff was transferred out of the Anoka County Jail on May 24, 2007. (*See* Doc. No. 55, Attach. 3, Affidavit of David Pacholl ("Pacholl Aff."), "Movement Log for TODD CURTIS MYERS.")

[4] The jail official who saw Plaintiff probably was Jo Ann Maro. She states in her affidavit that she saw Plaintiff on May 21, 2007, and noticed an injury to his lip. (Maro Aff. ¶¶ 2-3.) She further states that she asked Plaintiff what happened, and he responded: "'I cut myself shaving. Don't worry. Nothing that I can't handle.'" (*Id.* ¶ 3.)

3

by the Anoka County Jail, Plaintiff's transfer was initiated at 2:30 p.m., and the move was completed by 2:41 p.m. (Pacholl Aff. ¶¶ 4-5.)

Plaintiff alleges in his Complaint that:

> During the move to the other unit Officer Schroder had asked if I wanted to press charges?, while shaking his head no standing under the camera, out of sight of said camera.
>
> . . . I only replied, "I need to see a Nurse or the Doctor", "my jaw and right side of my face hurts as well." [H]is reply to me was, "Then you should not get in anymore fights and you will be fine."

(Compl., "Statement of Claim," ¶¶ 6-7.)

However, records maintained by the Anoka County Jail show that Defendant Schroeder's work shift on day of the alleged assault did not begin until 3:00 p.m. – approximately twenty minutes after Plaintiff's transfer to another unit had been completed. (Pacholl Aff. ¶ 6.) Schroeder has filed an affidavit in which he declares that he "did not assist with [Plaintiff's] transfer to another unit on May 21, 2007." (Schroeder Aff. ¶ 6.) Schroeder's affidavit further states: "I have no recollection of [Plaintiff] asking me to see a doctor or nurse on May 21, 2007, or at any other time he was incarcerated at the Anoka County Jail." (*Id.* ¶ 7.)

After Plaintiff had been transferred to a new unit at the Anoka County Jail, he allegedly asked someone (not identified in the complaint), if he could see a doctor or nurse, because "the bleeding would not stop." (Compl., "Statement of Claim," ¶ 5.) The Complaint does not indicate whether anyone responded to that request. Sometime later, Plaintiff saw a nurse in a "med line," and he told her he was having pain in his jaw, and could not eat. (*Id.* ¶ 8.) The nurse allegedly told Plaintiff that someone would see him "'when they could get around to it.'" (*Id.* ¶ 9.) Plaintiff alleges that he subsequently

4

informed several other unidentified jail employees that he was in pain, and that he needed medical attention, but nothing was done for him. (*Id.* ¶¶ 10-13.)

On or about May 24, 2007, Plaintiff was moved from the Anoka County Jail to the Minnesota Correctional Facility at St. Cloud, Minnesota. When Plaintiff arrived there, a nurse performed an intake examination. The nurse noted that Plaintiff's face was swollen, and referred him to an intake doctor. The doctor determined that x-rays should be taken, and the x-rays revealed that Plaintiff's jaw had been broken. The following morning, Plaintiff was taken to an oral surgeon outside of the prison. The oral surgeon showed Plaintiff the fracture that appeared on the x-ray, and "explained the treatment options available" to Plaintiff. (*Id.* ¶¶ 14-17.)

Plaintiff's complaint does not include any narrative description of how his injuries were treated, or how he recovered. However, the exhibits attached to the Complaint indicate that Plaintiff's jaw was wired shut for some time, and that he made a fairly good recovery from his injuries over the course of about two months.

Plaintiff has not explicitly identified the legal basis for his current lawsuit. It can reasonably be assumed, however, that he is claiming that the named Defendants violated his constitutional rights under the Eighth Amendment, by failing to properly treat the injuries he sustained at the Anoka County Jail. Plaintiff alleges that:

> I feel that I should be fairly compensated for my pain and suffering, for the days I was unable to sleep and eat due to the extreme pain I was in, and with my repeated attemtes [sic] to see the nurseing [sic] staff, as well as trying to see a Doctor that were ignored.

(Compl., "Relief Sought," ¶ 3.)

As previously mentioned, one of the named Defendants, the Anoka County Sheriff, has already been dismissed out of this case, and two of the named Defendants, "Nurseing Staff" and "Dr. on Call," have never been served or appeared. The only other Defendant, Schroeder, has moved for summary judgment, arguing that Plaintiff's claims against him must be dismissed for several reasons. Plaintiff has not specifically addressed any of Schroeder's arguments. Indeed, Plaintiff's response to the current summary judgment motion is little more than a rambling assemblage of non sequiturs, and it never even mentions Defendant Schroeder. Despite the obvious inadequacy of Plaintiff's opposition to Schroeder's summary judgment motion, the Court has nevertheless carefully considered whether that motion should be granted.

## DISCUSSION

**I. Standard of Review**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the party opposing the motion must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials

6

of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Id.* at 255.

## II. Official Capacity Claim

Defendant Schroeder initially contends that Plaintiff's claims against him must be dismissed because he is being sued only in his official capacity, and Plaintiff's Complaint fails to state an actionable official capacity claim. The Court agrees.

Our Court of Appeals has repeatedly held that if a plaintiff in a § 1983 case does not expressly state that a defendant is being sued in his or her individual capacity, then the plaintiff's claims are deemed to be brought against the defendant only in his or her official capacity. As explained by the Court of Appeals, "in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).

Here, Plaintiff's Complaint does not specifically indicate whether he is attempting to sue any of the named Defendants in their official capacities, or their individual capacities. Therefore, it must be assumed that Schroeder is being sued only in his official capacity. *Id.*; *see also Artis v. Francis Howell N. Band Booster Ass'n., Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) ("If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity."); *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("[I]f a complaint is silent, or only hints at the capacity in which a state officer is sued for

7

monetary damages, the complaint should be interpreted as an official-capacity claim....[;] [i]n actions against officers, specific pleading of individual capacity is required to put public officials on notice that they will be exposed to personal liability.") (citing *Egerdahl v. Hibbing Cmty Coll.*, 72 F.3d 615, 619 (8th Cir. 1995), and *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989)); *Lundak v. Nyseth*, Civil No. 04-4297 (JRT/FLN), 2005 WL 2216313 at *2 (D. Minn. 2005) ("It is long established that a § 1983 litigant wishing to sue a government agent in his individual, as well as official, capacity must expressly and unambiguously state so in the pleadings.") (quotations omitted).

It is also well-settled that a § 1983 claim against a government employee in his or her official capacity is deemed to be a claim against that person's governmental employer. Therefore, Plaintiff's § 1983 official capacity claim against Defendant Schroeder must be treated as a claim against his employer – Anoka County. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010) ("'A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent.'") (quoting *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006)); *see also Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)); *Winnett v. Saline County Jail*, No. 09-3154, 2010 WL 1643623, at *1 (8th Cir. 2010) (§ 1983 action against county employees in their official capacities is viewed as a suit only against the county).

To sustain an official-capacity claim against a municipal employee, such as Defendant Schroeder, a § 1983 claimant "must prove that the 'municipality *itself* caused

the constitutional violation at issue.'" *Elder-Keep*, 460 F.3d at 986 (quoting *Kuha v. City of Minnetonka*, 365 F.3d 590, 604 (8th Cir. 2003)) (emphasis in original). A municipality, such as Anoka County, can be liable under § 1983, but only if the claimant proves that the municipality has adopted some policy, custom, or practice that caused a violation of the claimant's federal constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 386-87 (1989); *see also Angarita v. St. Louis County*, 981 F.2d 1537, 1546 (8th Cir. 1992) ("A municipality may be held liable under Section 1983 only if a municipal custom or policy caused the deprivation of [a] right protected by the constitution or federal laws."); *Williams v. Little Rock Municipal Water Works*, 21 F.3d 218, 223 (8th Cir. 1994) ("[M]unicipal governments can be held liable for the acts of their employees in contravention of the civil rights of individuals only upon a showing that a 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' is the motivating force behind the acts of those employees.") (quoting *Monell*, 436 U.S. at 690); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's 'policy or custom' must have played a part in the violation of federal law.'") (citations omitted); *Grayson v. Ross*, 454 F.3d 802, 810 -11 (8th Cir. 2006) ("Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by 'a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'") (quoting *Monell*, 436 U.S. at 694).

To establish a municipal policy that will support a § 1983 cause of action, a claimant "must point to 'a deliberate choice of a guiding principle or procedure made by

the municipal official who has final authority regarding such matters,'" and "he must also show that the policy was unconstitutional and that it was 'the moving force' behind the harm that he suffered." *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628, 633 (8$^t$h Cir. 2009) (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999)). A § 1983 claim based on a municipal "custom" requires "evidence of a 'continuing, widespread, persistent pattern of unconstitutional misconduct.'" *Jenkins*, 557 F.3d at 634 (quoting *Mettler*, 165 F.3d at 1204).

To withstand a municipality's motion for summary judgment, a § 1983 claimant must produce evidence showing that he was harmed by some specific County policy or custom. *Id.*; *see also Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) ("[M]ere assertion . . . that a municipality has such a custom or policy [that purportedly caused a violation of the plaintiff's constitutional rights] is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference"); *Chambers v. St. Louis Cty.*, 247 Fed. Appx. 846, 848 (8th Cir. 2007) (stating that the "district court did not err in dismissing the claims against the County" because plaintiff's "speculative allegations about an apparent policy to condone and conceal police brutality were merely conclusory"); *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion) (stating that an actionable policy or custom cannot be inferred from a single instance of alleged unconstitutional activity).

In this case, Plaintiff has not shown, or even alleged, that his constitutional rights were violated because of some particular policy, custom, or practice adopted by Anoka County. Moreover, this Court cannot independently locate anything in the record that would allow a judge or jury to find that the Plaintiff's constitutional rights were violated

because of a policy or custom adopted by Anoka County and followed by its employees.[5]

Thus, this Court finds that Plaintiff has not presented an actionable official-capacity claim against Defendant Schroeder. For this reason alone, Schroeder is entitled to summary judgment. *See Williams*, 21 F.3d at 223-24 (stating that § 1983 official-capacity claims were properly dismissed on summary judgment because plaintiff "offer[ed] no facts or evidence regarding the existence of a particular [municipal] policy or custom which caused her to be subjected to a deprivation of constitutional rights," and "no reasonable factfinder could conclude that there was any [such] policy or custom"); *Jenkins*, 557 F.3d at 633 (stating that plaintiff's "policy arguments fail because he has not pointed to any officially accepted guiding principle or procedure that was constitutionally inadequate").

## III. Absence of Rebuttal Evidence

Even if Plaintiff had sued Defendant Schroeder in his individual capacity (or even if Plaintiff were to amend his pleading to allege an individual capacity claim), Schroeder still would be entitled to summary judgment. This is so because Schroeder's evidentiary submissions show that Plaintiff could not sustain an individual capacity claim, and

---

[5] Failure to properly train and supervise municipal employees can sometimes give rise to liability under § 1983, but "'[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under [Section] 1983.'" *Gatlin ex rel. Estate of Gatlin v. Green*, 362 F.3d 1089, 1094 (8th Cir. 2004) (quoting *City of Canton*, 489 U.S. at 389) (citations omitted). In this case, there are no allegations in the complaint, and there is no evidence in the record, which could support a § 1983 claim based on a systemic "failure to train" theory.

Plaintiff has not offered any evidence in rebuttal.

Plaintiff's claim against Schroeder is based on one very brief incident. Plaintiff alleges that shortly after he was assaulted by another inmate, he was transferred to a different unit at the Anoka County Jail, and while he was being transferred he had a short conversation with Defendant Schroeder. During that alleged conversation, Plaintiff purportedly told Schroeder "'I need to see a Nurse or the Doctor,' 'my jaw and right side of my face hurts as well.'" (Compl., "Statement of Claim," ¶ 7.) Schroeder allegedly replied, "'Then you should not get in anymore fights and you will be fine.'" (*Id.*)

Defendant Schroeder has countered Plaintiff's allegations by filing affidavits and jail records, which show that the conversation described in the Complaint could not have occurred as Plaintiff has alleged. The evidence produced by Defendant Schroeder shows that Plaintiff's transfer to a different unit in the Jail had been completed by 2:41 p.m. on May 21, 2007, and that Schroeder did not begin his work shift on that day until 3:00 p.m. Thus, the evidence shows that Schroeder was not working at the Jail when Plaintiff allegedly told Schroeder he was hurt. Furthermore, Schroeder has filed an affidavit in which he expressly declares that he did not assist in the transfer process. (Schroeder Aff. ¶ 6.)

Plaintiff has made no effort to rebut the evidence submitted by Defendant Schroeder. Indeed, Plaintiff's opposition to Schroeder's summary-judgment motion does not even allude to Schroeder in any way. Thus, the *unrefuted* evidence in the record effectively negates the very meager allegations on which Plaintiff's claim against Defendant Schroeder is based.

If a motion for summary judgment is properly supported by affidavits or other

evidence, the nonmoving party must present evidence, by affidavits or otherwise, showing that there is a genuine issue for trial. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.*, 824 F.2d 582, 585 (8th Cir. 1987). Although the evidence is examined in the light most favorable to the non-moving party, the non-moving party "may not rest upon mere allegation or denials of his pleading," but "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 256-57; *see also Johnson v. Hamilton*, 452 F.3d 967, 972 (8th Cir. 2006) ("A party opposing summary judgment is not permitted to merely rest on his pleadings but must instead set forth sufficient evidence from which a reasonable jury could find in his favor on all elements of his claims.").

In this case, Plaintiff has not presented any evidence that could support any judgment against Defendant Schroeder under any legal theory. Indeed, Plaintiff has not presented any affidavits or other evidence of any kind. The only evidence in the record is that which has been submitted by Defendant Schroeder. Based on that evidence, no judge or juror could find in Plaintiff's favor that the alleged conversation between Plaintiff and Schroeder actually occurred, and in the absence of that conversation, Plaintiff has no sustainable claim of any kind against Defendant Schroeder. For this additional reason, this Court finds that Defendant Schroeder is entitled to summary judgment.

## IV. No Viable Eighth Amendment Claim

Finally, this Court finds that even if Defendant Schroeder were being sued in his individual capacity, and even if Plaintiff had provided some evidence to support the bare allegations made in his Complaint, Plaintiff's claim against Schroeder still could not

13

survive summary judgment.

As previously noted, Plaintiff appears to be claiming that Defendant Schroeder violated his rights under the Eighth Amendment, by deliberately disregarding his alleged need for medical attention after he was assaulted by another inmate.[6] To prevail on such a claim, Plaintiff must show that he had a "serious medical need," and that Defendant Schroeder knew about it, but deliberately ignored it. *Jenkins*, 557 F.3d at 631; *see also Johnson v. Hamilton*, 452 F.3d at 972-73 (stating that to sustain an Eighth Amendment claim against prison officials based on inadequate medical care, a prisoner "must demonstrate that he suffered objectively serious medical needs, and the officials actually knew of but deliberately disregarded those needs").

Plaintiff has not presented a sustainable Eighth Amendment claim against Defendant Schroeder because he has not shown that Schroeder deliberately ignored a serious medical need. Even if the allegations in Plaintiff's Complaint were supported by some actual evidence, Plaintiff's Eighth Amendment claim still would fail because even those unsubstantiated *allegations* are insufficient to establish such a claim.

---

[6] In the earlier R&R in this case, the Court pointed out that the Eighth Amendment is not directly applicable to pre-trial detainees. However, even if Plaintiff was a pre-trial detainee, rather than a "prisoner," his claim against Defendant Schroeder would be analyzed under Eighth Amendment principles, because the constitutional rights of pre-trial detainees under the Fourteenth Amendment's due process clause are generally the same as those of convicted prisoners under the Eighth Amendment's cruel and unusual punishment clause. *See Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989) (stating that pre-trial detainees' "confinement conditions are analyzed under the due process clause of the Fifth and Fourteenth Amendments rather than the Eighth Amendment's 'cruel and unusual punishment' standard which is used for convicted prisoners"); *Davis v. Hall*, 992 F.2d 151, 152-53 (8th Cir. 1993) (per curiam) (applying Eighth Amendment's "deliberate indifference to serious medical needs" standard to pre-trial detainee's § 1983 claim of deficient medical care).

A county jail official who is not a trained health care provider is not expected to know whether an inmate requires medical treatment, unless the inmate is visibly suffering from some injury or medical condition that any lay person would readily recognize as a serious medical need. *Jenkins*, 557 F.3d at 633 ("Jailers bear only the responsibility to identify medical needs that are 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'") (quoting *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997), and *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)); *see also Jones v. Minn. Dept. of Corrections*, 512 F.3d 478, 483 (8th Cir. 2008) ("The question . . . is not, in hindsight, whether [the prisoner] had a serious medical condition, but rather, whether the condition was so obvious that a layperson would have easily recognized the need for medical treatment.").

In this case, Plaintiff has alleged only that he told Schroeder that he needed to see a doctor or nurse because his jaw hurt, and his face hurt. This allegation alone, even if proven true, would not adequately demonstrate that Plaintiff was suffering from an injury that a layperson, such as Schroeder, would readily identify as a "serious medical need." In short, the bare allegations in Plaintiff's Complaint, even if proven true, do not show that Schroeder was deliberately indifferent to a serious medical need.

Furthermore, even if Schroeder had fully understood Plaintiff's alleged need for medical care, Plaintiff's Eighth Amendment claim still would fail because he has offered no support that Schroeder's alleged inaction exacerbated his medical condition. *See Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (stating that the inmate's Eighth Amendment claim could not survive summary judgment motion because "he offered no evidence establishing that any delay in treatment had a detrimental effect").

For the reasons cited, this Court finds that even if the allegations in Plaintiff's Complaint were supported by adequate evidentiary submissions, which is clearly not the case here, Defendant Schroeder still would be entitled to summary judgment. In other words, even if Plaintiff could prove his meager allegations against Defendant Schroeder, he still would not have a sustainable Eighth Amendment claim against Schroeder.

**V. Unserved Defendants**

Finally, the Court finds that Plaintiff's claims against the two unserved Defendants, "Nurseing [sic] Staff," and "Dr. on Call," should be dismissed at this time. Plaintiff commenced this action more than a year ago, and the Clerk sent marshal service forms to him shortly thereafter. According to the Federal Rules of Civil Procedure, service of process must be completed within 120 days after an action is filed. Fed. R. Civ. P. 4(m). In this case, that deadline expired nearly a year ago, and to date, Plaintiff still has not identified the unserved Defendants with sufficient specificity to allow for service of process. Furthermore, Plaintiff has not suggested any means for effecting service of process on the unserved Defendants in the foreseeable future.

Defendant Schroeder's motion for summary judgment raised the service of process issue, and suggested that this action should be dismissed as to the unserved Defendants. Plaintiff has had an opportunity to respond to that suggestion, but he has not shown any good cause to grant him any additional time to complete his service of process responsibilities. Therefore, this Court recommends that this action now be dismissed without prejudice as to Defendants "Nurseing [sic] Staff" and "Dr. on Call," pursuant to Fed. R. Civ. P. 4(m). *See Coleman v. Newton*, 334 Fed. Appx. 52, 53 (8th

16

Cir. 2009) (unpublished opinion) (stating that the prisoner complaint was properly dismissed without prejudice pursuant to Rule 4(m) because the prisoner failed to return forms needed to complete service of process in a timely manner).

## RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Defendant Schroeder's Motion for Summary Judgment (Doc. No. 52), be **GRANTED**;

2. Plaintiff's claims against Defendant Schroeder be **DISMISSED WITH PREJUDICE**;

3. Plaintiff's claims against Defendants "Nurseing [sic] Staff" and "Dr. on Call," be **DISMISSED WITHOUT PREJUDICE**, pursuant to Fed. R. Civ. P. 4(m); and

4. This action be dismissed and closed.

Date: June 4, 2010

                                     *s/ Jeffrey J. Keyes*
                                     JEFFREY J. KEYES
                                     United States Magistrate Judge

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **June 18, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **14 days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court,

and it is therefore not appealable directly to the Circuit Court of Appeals.